**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                                   No. CIV 99-243 BB/DJS

ONE 1997 FORD EXPEDITION
UTILITY VEHICLE, VIN:
1FMFU18L1VLC03645, NEW MEXICO
LICENSE 975JLW,

        Defendant,

  and

ROBERTA A. ARCHULETA, HERMAN M.
ARCHULETA, and NATIONSBANK, N.A.,

        Claimants.

**OPINION AND ORDER**

THIS MATTER comes before the Court for consideration of Plaintiff's motion for summary judgment (Doc. 13). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the motion for summary judgment will be denied.

This is a forfeiture case brought under 49 U.S.C. Section 80303 (1997). Plaintiff claims the Defendant vehicle ("Expedition") was used to transport contraband, in the form of counterfeit U.S. currency, or to facilitate the transportation, concealment, receipt,

possession, purchase, sale, exchange, or giving away of counterfeit U.S. currency, in violation of 49 U.S.C. Section 80302 (1997). Plaintiff has moved for summary judgment. In response, Claimants have raised three main defenses. First, they maintain Roberta Archuleta was the owner of the Expedition, and is entitled to an innocent-owner defense. Second, they maintain forfeiture of the Expedition would violate the Excessive Fines Clause of the Eighth Amendment. Finally, they maintain there are genuine issues of material fact as to whether the Expedition was connected to any violation of Section 80302. The Court addresses each of these arguments in turn.

**Innocent Owner Defense:** The forfeiture statute in question in this case, Section 80303, contains a limited innocent-owner defense. This provision requires the would-be innocent owner to establish that the person committing the criminal violation obtained possession of the vehicle by violating a criminal law. In other words, the only innocent-owner defense allowed by the statute is that an individual other than the owner stole the vehicle or otherwise obtained it illegally, and then used the vehicle to commit a violation of Section 80302. This provision obviously does not apply to this case, because Herman Archuleta, Roberta's husband, is the person who allegedly used the vehicle to violate Section 80302. Any use he made of the vehicle to do so would most likely be consensual rather than criminal, and Roberta does not argue otherwise. Instead, she maintains the Due Process clause of the United States Constitution requires that a broader innocent-owner defense apply to forfeitures sought under Section 80303.

In support of her argument, Roberta cites dictum from *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689-90 (1974) (noting that forfeiture of a truly innocent owner's property would raise serious constitutional questions). However, the Supreme Court has rejected its prior suggestion that the Constitution requires that an innocent-owner defense be available in forfeiture cases. *See Bennis v. Michigan*, 516 U.S. 442 (1996) (holding there is no constitutional innocent-owner defense); *see also United States v. An Antique Platter of Gold*, 184 F.3d 131 (2d Cir. 1999) (pointing out that under *Bennis*, there is no due process right to an innocent-owner defense). One circuit court has attempted to limit the scope of *Bennis*, by pointing out that in *Bennis* the property forfeited had been used in the commission of a crime. *See Rucker v. Davis*, 237 F.3d 1113, 1125 (9th Cir. 2001). Even if that limitation accurately reflects the law, however, the limitation does not help Roberta in this case. The Expedition Plaintiff requests forfeiture of was allegedly used in the violation of Section 80302.[1] As noted above, that Section prohibits transporting contraband in a vehicle, or using a vehicle to facilitate transactions involving contraband, or concealing contraband in a vehicle. The Expedition is the very vehicle allegedly used by Herman to transport, conceal, or facilitate the transactions involving counterfeit currency. Therefore, the Expedition is inextricably linked to the crime that is the basis of the forfeiture, and a *Rucker-*

---

[1] For purposes of this issue, the Court assumes the government would prevail on the issue of whether or not the Expedition was used to commit a violation of Section 80302. If the government did not prevail on that issue, of course, there would be no need for an innocent-owner defense because the forfeiture requirements of Section 80303 would not be met.

type limitation, if viable under *Bennis*, would not apply to this case.  The Court therefore holds Roberta is not entitled to an innocent-owner defense.

**Excessive Fines Clause:**  Plaintiff maintains the Excessive Fines Clause of the Eighth Amendment does not apply to this case, because this is an *in rem* forfeiture action, rather than an *in personam* action.  Plaintiff relies on statements and distinctions made by the Supreme Court in *United States v. Bajakajian*, 524 U.S. 321 (1998).  In that case, the Supreme Court invalidated, on excessive-fine grounds, the forfeiture of a large amount of currency that the claimant had attempted to take out of the country without declaring the currency to customs, as required by law.  In doing so, the Supreme Court distinguished forfeitures that are purely remedial and *in rem*, from forfeitures that are punitive and *in personam*.  From this distinction, Plaintiff draws the inference that any *in rem* remedial forfeiture is immune from scrutiny under the Excessive Fines Clause.  The *Bajakajian* opinion also states, however, that modern forfeiture statutes have blurred the distinction between civil *in rem* and criminal *in personam* forfeiture.  *Id.*, 524 U.S. at 331, n. 6. The Supreme Court also noted that it has previously held that a modern statutory forfeiture is a "fine" for Eighth Amendment purposes if it constitutes punishment even in part, "regardless of whether the proceeding is styled *in rem* or *in personam*."  *See id.*  In doing so, the Court cited *Austin v. United States*, 509 U.S. 602 (1993), a case in which the Supreme Court concluded that forfeiture generally, and statutory *in rem* forfeiture in particular, have historically been understood to be punishment, at least in part.  The Supreme Court went on to hold in *Austin* that the Excessive Fines Clause applied to the forfeiture of a mobile home

and auto body shop from which drug sales had been made and in which drugs and drug paraphernalia were found.

Pursuant to *Austin* and *Bajakajian*, the Court must decide whether the forfeiture in this case is punitive, at least in part, to determine whether the Excessive Fines Clause has any applicability here; the fact that this proceeding is *in rem* is not dispositive of the issue.[2] Factors that courts have considered significant in deciding whether a forfeiture is punitive in part, or completely remedial, include the following: (1) whether the forfeiture statute provides an innocent-owner defense; (2) whether the forfeiture amount is limited by the extent of the government's loss; (3) whether the forfeiture is tied to a criminal violation; and (4) whether there is an indication that Congress intended the forfeiture to serve deterrent and punishment purposes as well as remedial purposes. *See Austin*, 509 U.S. at 619-22; *United States v. $273,969.04 U.S. Currency*, 164 F.3d 462, 466 (9th Cir. 1999); *United States v.*

---

[2]The Court recognizes that there is some language in *Bajakajian* that leads to confusion where, as here, the property sought to be forfeited was used to some extent in committing the crime. *Bajakajian* could be read to indicate that where an "instrumentality" of the crime is involved, the excessive-fines analysis only applies if the forfeiture proceeding is a criminal *in personam* proceeding, rather than an *in rem* proceeding. *See* 524 U.S. at 333; *see also United States v. Dubose*, 146 F.3d 1141, 1145 (9th Cir. 1998). However, this suggestion contradicts the clear holding of *Austin*, which decided that most *in rem* statutory forfeitures constitute a fine for Eighth Amendment purposes. Furthermore, since *Austin*, like this case, involved the use of property to conceal contraband or facilitate the commission of a contraband offense, the Court sees no principled way to distinguish the forfeiture sought in this case from that sought in *Austin*. Therefore, the excessive-fines analysis cannot be avoided simply by stating that the Expedition was an instrumentality of the crime and this proceeding is *in rem* rather than *in personam*. *See* Barry L. Johnson, *Purging the Cruel and Unusual: The Autonomous Excessive Fines Clause and Desert-Based Constitutional Limits on Forfeiture After United States v. Bajakajian*, 2000 U.Ill.L.Rev. 461, 488-90 (2000); *see also United States v. 817 N.E. 29th Dr., Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999).

*Lippert*, 148 F.3d 974, 977 (8th Cir. 1998). At least three of these four factors augur in favor of finding that Section 80303 is punitive, at least in part.[3]

As noted above, Section 80303 does contain an innocent-owner defense, albeit one much more limited than the provision found in the statute at issue in *Austin*. This indicates that Congress intended some level of culpability on the part of the owner of the forfeited property, even if that culpability rose only to the level of negligence. This emphasis on owner culpability tends to make Section 80303 appear punitive in part. *See Austin*. Furthermore, the amount of a forfeiture under Section 80303 is not limited or connected in any way to the amount of loss suffered by the United States, as it would be if the provision were solely remedial. Finally, forfeitures under Section 80303 are clearly tied to the commission of a crime, as forfeiture can occur only where the vehicle has been involved in a violation of Section 80302. For these reasons, the Court holds that a forfeiture under Section 80303 is punitive, at least in part, and that an Excessive Fines analysis must be performed to decide whether the forfeiture requested in this case should be allowed.

In evaluating the excessiveness of a forfeiture, or "fine," the Court must examine the connection between the property and the criminal offense, to determine whether the connection is more than a fortuitous or incidental one. *See United States v. 829 Calle de Madero, Chaparral, N.M.*, 100 F.3d 734, 738 (10th Cir. 1996). If a sufficient connection

---

[3]Since the first three factors are satisfied, as discussed below, the Court has not engaged in an extensive search of the legislative history to determine whether Congress expressed an intention to use Section 80303 for deterrent and punitive purposes, as well as remedial purposes. Plaintiff remains free to conduct such an inquiry, should Plaintiff deem it advisable or helpful.

is present, the Court must engage in a proportionality analysis, comparing the severity of the offense, the harshness of the sanctions imposed, and the culpability of the claimant. *See id.* In turn, each of these three factors is broken down into subparts, requiring the Court to consider the value of the property, the function of that property, any other sanctions imposed upon the claimant or claimants, the extent of the claimant's and the property's roles in the underlying offense, the nature and scope of the illegal operation at issue, the personal benefits reaped by the claimant, the value of any contraband involved in the offense, and the maximum sanction Congress has authorized for the underlying offense. *See id.*

As discussed in the next section, there is at least a question of fact as to whether the Expedition was involved in violations of Section 80302. For purposes of summary judgment and the Excessive Fines analysis, therefore, the Court assumes there is a sufficient connection between the Expedition and the offense to justify forfeiture. As to the proportionality assessment, the Court notes the following with regard to the severity-of-offense factor: (1) the amount of counterfeit currency allegedly passed by Herman Archuleta was $320, Roberta Archuleta has not been accused of passing any counterfeit currency, and there is no indication in the record as to whether Herman or Roberta possessed any additional amounts of counterfeit currency;[4] (2) neither Herman nor Roberta has ever been prosecuted for, or convicted of, any offense arising out of the alleged violation of Section

---

[4]There is a suggestion in one affidavit that Herman may have had more counterfeit bills in his possession when he was arrested, but there is insufficient evidence concerning the amount of such currency; it does not appear to be more than four or five $20 bills.

7

80302; and (3) the maximum fine for the alleged offense, under the Sentencing Guidelines, is $10,000.[5]

In assessing the harshness of the sanctions suffered by Claimants, the Court notes the value of the Expedition, as estimated by the United States and conceded by Claimants for summary-judgment purposes, is $30,000. There is no indication in the record this point as to whether the Expedition had any special function that would make forfeiture more harsh than usual in this case. Finally, since neither Claimant has been charged with any crime at this point, there appear to be no other sanctions that have been imposed on either Claimant as a result of the alleged violation of Section 80302.

One point of contention between the parties is whether, in making the proportionality comparison, the Court should use the maximum fine provided by the Guidelines or the maximum fine provided by statute. The latter would be $250,000, the standard fine for a felony offense under 18 U.S.C.A. Section 3571. Plaintiff relies on *Calle de Madero* to argue that it is the statutory figure that controls. However, while it is true that the Tenth Circuit used the statutory maximum in that case in making the required comparison, *Calle de Madero* was decided before the Supreme Court issued its *Bajakajian* opinion. In *Bajakajian*, the Supreme Court engaged in a proportionality analysis using the maximum Guidelines fine as the point of comparison, rather than the statutory maximum. *See* 524 U.S. at 338-39. The Supreme Court also seemed to indicate that the Guidelines, which are more closely tailored

---

[5]This figure is taken from Claimants' brief; it was not challenged by Plaintiff in Plaintiff's reply brief. The Court's review of the Guidelines indicates Claimants' assertion is correct.

to the specific crime underlying a forfeiture, are a better measure for purposes of the proportionality analysis. *See id.*, n. 14. Since *Bajakajian* was decided, a number of Circuit courts have determined that the maximum fine provided by the Guidelines, rather than the statutory maximum, is the preferable figure for use in conducting the proportionality analysis. *See United States v. One Parcel of Real Estate at 10380 S.W. 28th St., Miami, FL*, 214 F.3d 1291, 1295 (11th Cir. 2000); *United States v. Beras*, 183 F.3d 22, 29, n. 5 (1st Cir. 1999); *United States v. 3814 NW Thurman St., Portland, Oregon, a Tract of Real Property*, 164 F.3d 1191, 1197 (9th Cir. 1998). The Court believes it is likely the Tenth Circuit would also adopt this approach at this time, and will therefore use the Guidelines maximum fine as the significant figure for comparison.

At this point, therefore, the situation in this case is as follows. Since neither Claimant was ever prosecuted or convicted of a Section 80302 offense, the issue of their culpability is murky, at best.[6] The Court has been provided no information indicating why neither Claimant was ever prosecuted, given the information the United States allegedly possessed about their involvement in the scheme to pass counterfeit currency. *See Thurman St.*, 164 F.3d at 1197 (considering fact that claimant had not been charged with any criminal activity

---

[6]The Court notes that Herman Archuleta was prosecuted in federal court for other offenses unrelated to Section 80302 and entered into a plea bargain, which may account for the lack of prosecution for a Section 80302 offense. However, Herman has disclaimed any ownership of the Expedition, which raises serious questions about his standing to challenge the forfeiture. Since Roberta does maintain an ownership claim, it is not necessary to decide the standing issue at this time, and the Court will refrain from ruling on the question. The proportionality issue will therefore be considered without any distinction between Herman and Roberta, for purposes of this motion.

at all). The value of the contraband involved was small, and so far there is no indication it was part of a larger scheme to pass large amounts of counterfeit currency. Finally, no information has been presented to the Court concerning the costs incurred by the United States in investigating the alleged violation of Section 80302. The proposed forfeiture of a vehicle worth $30,000 is three times the maximum fine that would be imposed under the Guidelines for this offense. While a multiplier of three might be acceptable if more information were available about the seriousness of the illegal scheme involved in this case, or the culpability of Claimants, or the costs to the government, at this point the Court cannot hold as a matter of law that such a multiplier is permissible under the Excessive Fines Clause. *See, e.g.*, *Beras*, 183 F.3d at 28-29 (forfeiture of $135,000 was excessive, where maximum Guidelines fine was $30,000, a multiplier of 4.5); *United States v. One Parcel Property Located at 427 and 429 Hall St.*, 74 F.3d 1165, 1172 (11th Cir. 1996) (forfeiture of property worth $65,000, where maximum fine was $40,000, slightly over a 1.5 multiplier, was not excessive given serious nature of underlying offense, a drug distribution offense). The excessiveness issue requires a factual inquiry. *See United States v. $273,969.04 U.S. Currency*, 164 F.3d 462, 466 (9th Cir. 1999); *United States v. All Assets of G.P.S. Automotive Corp.*, 66 F.3d 483, 499-502 (2d Cir. 1995). Plaintiff's motion for summary judgment on the Excessive Fines issue will therefore be denied.

**Alleged Violation of Section 80302:** In forfeiture cases, the government has the initial burden of establishing probable cause for forfeiture. *See United States v. Radio Station Transmission Equip.*, 218 F.3d 543, 548 (6th Cir. 2000). If the government does so,

the burden shifts to the claimant to establish, by a preponderance of the evidence, that forfeiture is not appropriate. *See id.* In this case, the parties have raised a preliminary issue, concerning the use of hearsay by Plaintiff in making the required probable cause showing. Claimants maintain the hearsay evidence contained in the affidavits submitted by Plaintiff must be disregarded, in accordance with the usual rules applying to summary-judgment proceedings. Plaintiff maintains the rule is different in forfeiture cases.

Although Claimants' argument has been accepted by one Circuit court, the vast majority of courts considering the issue have agreed with Plaintiff. *See Radio Station*, 218 F.3d at 549 (hearsay may be considered by the court at the summary-judgment stage in forfeiture proceedings, in deciding whether the government has made the requisite showing of probable cause); *United States v. Parcel of Land*, 914 F.2d 1, 5 (1st Cir. 1990) (same, as long as there is substantial basis for crediting hearsay); *United States v. Premises and Real Property at 4492 South Livonia Rd.*, 889 F.2d 1258, 1267 (2d Cir. 1989) (same); *contra, United States v. Leak*, 123 F.3d 787, 796, n. 4 (4th Cir. 1997) (stating, without discussion, that hearsay should not be considered at summary-judgment stage). Courts agreeing that hearsay may be considered have pointed out that in affidavits for search warrants, hearsay evidence may be considered if it is thought to be "reliable" hearsay. Given the clear majority position, which appears to be well-reasoned, the Court will hold that the hearsay evidence contained in Plaintiff's submissions will be considered for summary-judgment purposes, as long as there is a reasonable basis to consider the hearsay evidence credible.

To make the required showing of probable cause, Plaintiff has presented the following information the Court considers reasonably credible: (1) on the same day in October 1997, an individual matching Claimant Herman Archuleta's description purchased goods at three different stores on the west side of Albuquerque, paying for the goods with a total of $320 in cash; (2) also on that same day, the goods purchased were returned, for cash, to other branches of these three stores, located on the east side of Albuquerque; (3) at the third store, while the individual was attempting to return the items purchased, Albuquerque police officers were called and the individual was arrested; (4) as the police officers drove into the parking lot of the store, a female moved to the driver's seat of the Expedition at issue here and exited the parking lot rapidly; (5) the individual initially told officers his name was James Gomez, but when interviewed by a federal agent admitted he was Herman Archuleta; (6) Mr. Archuleta then admitted he had driven from store to store in the Expedition, passing currency he had obtained in Phoenix, because the currency looked "funny" to him. This information, standing alone, is sufficient to establish probable cause that a violation of Section 80302 occurred, and that the Expedition was used to transport contraband, or facilitate the transportation, exchange, possession, or giving away of the contraband. The Court must therefore review the evidence submitted by Claimants to determine whether a genuine issue of material fact has been raised, sufficient to avoid summary judgment on this issue.

In response to Plaintiff's showing, Claimants have submitted affidavits. In these affidavits, Herman contends he never told any agent that he had obtained currency in

12

Phoenix that looked "funny." He also contends the currency in his wallet appeared genuine to him, and to Albuquerque police officers who examined it. Finally, he avers, as noted above, that he has never been prosecuted for any crime arising out of his activities on the day in question. Roberta, in her affidavit, states she had no knowledge or reason to believe Herman may have possessed counterfeit currency. Neither Claimant denies having gone to three different stores to purchase items with cash, and then returning those items to three different branches of the same stores, all on the same day. This evidence is certainly indicative of a scheme to trade in currency that might be considered suspect, and the lack of any reasonable explanation for Herman's actions on that day points to a suspicious reason for his activities.

At this point, however, there is one fact giving the Court pause as to the merits of the forfeiture action--the fact that neither Claimant was ever prosecuted for a crime involving the allegedly counterfeit currency. The Court does not know whether the lack of prosecution was due to insufficient evidence of criminal intent, a decision that the offense was not important enough to pursue, a deliberate choice to pursue forfeiture instead of criminal penalties, simple administrative oversight, or some other reason. In addition, since the issue concerning the Excessive Fines Clause will be going forward, and the culpability of Claimants will be a factor in that analysis, little or no additional work will be required if summary judgment is not granted at this time on the merits of the forfeiture. For these reasons, the Court will exercise its discretion to deny partial summary adjudication on the merits of the forfeiture. *See* 10B Wright, Miller & Kane, *Federal Practice and*

*Procedure:Civil* § 2737, at 319 (1998) (court has discretion to decline to enter partial summary judgment if it would not materially expedite the adjudicative process).

**Conclusion:**  Based on the foregoing, the Court holds as follows:  (1) the innocent-owner defense may not be asserted in this action; (2) summary judgment will be denied as to the Excessive Fines Clause issue and as to the question of whether the Expedition was used to commit a violation of Section 80302.


### ORDER

A Memorandum Opinion having been issued in this case, it is hereby ORDERED as follows:  Plaintiff's motion for summary judgment (Doc. 13) is DENIED.

Dated this 20th day of March, 2001.



_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Stephen R. Kotz
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103

**For Claimants**:
Paul J. Kennedy
Kirtan Khalsa
Kennedy & Han
1122 Central Ave. S.W.
Albuquerque, New Mexico 87102